THE UNITED STATES DISTRICT
COURT DISTRICT OF
COLORADO

Civil Action No.: 1:21-cv-2040-NRN

THE KONG COMPANY, LLC, a Colorado limited liability

    company, Plaintiff,

v.

PICCARD MEDS FOR PETS CORP, a Florida
corporation, MARLON MARTINEZ, a natural person,
and
JOHN DOES 1-10, individually or as corporate/business entities,

    Defendants.

---

**RESPONSE OF MARLON MARTINEZ TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Now comes Marlon Martinez ("Martinez") by and through his attorney Michael J. Davis of Davis Murray Law Group LLC, and hereby files the Response of Marlon Martinez to Plaintiff's Motion for Partial Summary Judgment, and in support thereof states as follows:

**I.    INTRODUCTION**

The claim that the Kong Company, LLC ("Kong") bases this Motion on is the eighth claim of Kong's lawsuit against Martinez and Piccard Meds for Pets Corp. ("Piccard") (or collectively "Defendants") and is allegedly based on Martinez's execution of an agreement that he signed in which Piccard was to cease selling Kong products in online marketplaces. It is, to say the least, an odd agreement with many issues. The agreement appears to be between Piccard (of which Martinez is president) and Kong because it is Piccard that sells the Kong products. Hence, this claim appears to be in error. The Agreement does not state that Martinez sells the products individually, the Complaint does not establish any factual predicates that would be

1

necessary to pierce the corporate veil, nor does it say that Martinez acts as an alter ego of Piccard. For this reason alone, this Motion should fail. Further, the Motion is based on an illusory contract because there is no consideration that Kong is offering that has any viability and Kong intended to cancel Piccard's ability to sell through to 3rd party websites even before the Sell Through Agreement was signed. Finally, it is premised on the fact that Kong could bring a trademark infringement claim that is highly questionable and yet to be proven.[1] For these reasons, this Motion should be denied and the parties should proceed to discovery on this Motion to develop the underlying facts which have not been developed at this time.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendants admit that Kong manufactures and distributes high-quality pet products including durable rubber toys, grooming supplies, and treats for dogs and cats ("KONG products"). (Dkt. 19, Scheduling Order, at 9 ¶1; Dkt. 13, Answer, at 3 ¶ 13.)

2. Defendants deny that to ensure that customers receive the genuine, high-quality products they expect to receive from Kong, Kong allows Kong products to be sold in the United States only by a network of authorized distributors, retailers, and resellers (collectively, "Authorized Sellers") who agree to abide by Kong policies relating to quality controls, customer service, and other sales practices (collectively, the "Kong Rules"). (Declaration of Lindsay Rich In Support of Plaintiff's Motion for Partial Summary Judgment ("Rich Decl."), at ¶ 2.)

3. Defendants admit that on or about 2019, Kong developed Rules that restricted Authorized Sellers' ability to sell Kong products on the Internet. Although Authorized Sellers are permitted to sell Kong products on websites they operate themselves if the websites meet certain criteria and the Authorized Sellers also have a physical retail location,

---

[1] Counts 1 through 6 of the Kong Complaint are either explicitly claims as to Trademark Infringement or in which trademark infringement forms the basis of those claims.

no Authorized Seller—including Authorized Sellers that are permitted to sell on their own websites—is allowed to sell Kong products on any third-party marketplace website unless the Authorized Seller first receives written approval from Kong. The Kong Rules list examples of "third-party marketplace websites" as "Amazon, eBay, Jet, Rakuten, Walmart Marketplace, or Sears Marketplace." To obtain Kong's approval to sell on a third-party marketplace website, Authorized Sellers must submit applications to Kong and undergo vetting by Kong. (Rich Decl. at ¶ 4; Ex. 1, The Kong Company, LLC Authorized Reseller Policy, at PIC000001-PIC000002.)

4. Denied that on or around February 2019, Kong discovered that Defendant Marlon Martinez and Defendant Piccard Meds for Pets Corp[2] (collectively, "Defendants") were selling Kong products through a third-party storefront on Amazon. Piccard had been selling on third party websites since 2013 and had been authorized to sell on those websites since 2017. See Martinez Affidavit. Admitted that Defendants were Authorized Sellers of Kong products at this time and were permitted to sell Kong products online through a website operated by Defendants that is located at "Piccard's Pets Website" and denies that Defendants had not been approved to sell Kong products on any third-party marketplace website. (Rich Decl. at ¶ 5.)

5. Admitted that Kong had provided its Authorized Reseller Policy on or around April 17, 2018, but denied that it was provided to Martinez in his individual capacity, but rather to Martinez in his capacity as president of Piccard. Admitted that the policy stated that Piccard, not Martinez, is prohibited from selling Kong products on any "third-party marketplace website such as Amazon, eBay, Jet, Rakuten, Walmart Marketplace, or Sears Marketplace without the prior written consent of Kong." However, Piccard asserts this was

---

[2] Plaintiff appears to assert that Martinez, not Piccard, is somehow the culpable party even though Piccard has entered into all agreements, not Martinez.

3

in direct contravention to prior approvals they had been given. See Martinez Affidavit. (Rich Decl. at ¶ 5; Ex. 1 at PIC000001-PIC000002.)

6. Admitted that on February 25, 2019, Kong informed Martinez by email that his Authorized Seller account was "on hold due to active Amazon listings." Admitted that Kong also wrote that: "As you are aware Kong's policies no longer allow for its product to be listed on Third Party Marketplaces." Admitted that Kong explained why it had elected to limit the sales of its products on third-party marketplace websites. Admitted that Kong stated that the hold on Martinez's Authorized Seller account would be lifted "[u]pon removal of Kong products from 3rd Party Marketplaces" but by way of clarification that this meant only that Piccard could sell on its own site and not other sites. (Rich Decl. at ¶ 6; Ex. 2, February 25, 2019 email correspondence from Kong to Martinez, at PIC000146-PIC000147.)

7. Admitted that on February 25, 2019, Martinez responded to Kong's email and wrote: "I understand." Admitted that Martinez also wrote: "[C]an we finish selling these off?, it would be very costly to have these returned." (Rich Decl. at ¶ 6; Ex. 3, February 25, 2019 email correspondence from Martinez to Kong, at PIC000146.)

8. Admitted that later on February 25. 2019, Kong responded to Martinez's email and explained that Kong would be willing to enter into a "3rd Party Marketplace Sell Through agreement". Denied that the email said it would allow Martinez to temporarily sell Kong products on Amazon until an agreed-upon "sell through date." Admitted that Kong attached its proposed sell-through agreement to its email, and that it explained that Martinez would be permitted to again sell Kong products through the Piccard's Pets Website once he signed the sell-through agreement. (Rich Decl. at ¶ 6; Ex. 4, February 25, 2019 email correspondence from Kong to Martinez, at PIC000145-PIC000146.)

9. Admitted that Martinez signed the sell-through agreement (the "Contract") on March 1, 2019. Kong signed the Contract on March 4, 2019. By way of clarification,

Martinez signed it in his capacity as President of Piccard. (Rich Decl. at ¶ 9; Ex. 5, fully executed agreement, at PIC000029; Scheduling Order at 9 ¶ 4; Answer at 15 ¶ 145.)

10. Admitted that the Contract signed by Martinez states that "[a]fter March 31, 2019 (the 'Sell- Through Date'), neither I nor any employee, agent, or anyone else acting at my direction or on my behalf, will advertise or sell any products bearing any Kong trademarks ('Kong Products') on any Third Party online marketplace, including (but not limited to) Amazon, eBay, Jet, Rakuten, Walmart Marketplace, and Sears Marketplace, either directly or through any other person, company, or entity. I will remove all existing listings of Kong Products I am selling on any online marketplace by the Sell-Through Date." (Rich Decl. at ¶ 10; Ex. 5 at PIC000028.)

11. The Contract also states that "Beginning immediately, I will not acquire any Kong Products for purposes of resale on any online marketplace. From now until the Sell-Through Date, the only Kong Products I sell on any online marketplaces will be those in my existing inventory as of this date." (Rich Decl. at ¶ 11; Ex. 5 at PIC000029.)

12. The Contract also states that "After the Sell-Through Date, I will only advertise or sell Kong Products in compliance with Kong's Authorized Reseller Policy (the 'Policy'), as it may be amended from time to time." This clause confirmed that, if Martinez complied with this obligation under the Contract, he would continue to be an Authorized Seller and be permitted to sell Kong Products through the Piccard's Pets Website even though he was prohibited from selling on Amazon or any other third-party marketplace website. (Rich Decl. at ¶ 12; Ex. 5 at PIC000029.)

13. Admitted that the Contract also states that "Should I breach this agreement, I will be responsible for payment of the attorneys' fees incurred by Kong relating to its enforcement of this agreement." (Rich Decl. at ¶ 13; Ex. 5 at PIC000029.)

14. Admitted that the Contract provides that it "shall be governed by the laws

of the state of Colorado." (Ex. 5 at PIC000029.)

15. Denied that Kong complied with its obligations under the Contract. Admitted that on March 5, 2019, Kong sent an email to Martinez which stated that he had again "been approved to sell Kong toys on Piccardmeds4pets.com." The email also enclosed a new copy of Kong's Authorized Reseller Policy and other materials. (Rich Decl. at ¶ 14; Ex. 6, March 5, 2019 email correspondence from KONG to Martinez, at PIC000162.)

16. Admitted that Martinez did not comply with his obligations in the Contract but by way of clarification, Kong never intended to allow Piccard to sell through 3rd party websites other than its own as explained in the February 25, 2021 email attached as Plaintiff's Exhibit 2. Admitted that after March 31, 2019, the agreed upon Sell-Through Date, Martinez continued to sell Kong products on Amazon. Admitted that after March 31, 2019, Martinez also began listing Kong products for sale on a third-party storefront on Walmart. (Rich Decl. at ¶ 15; Scheduling Order at 9 ¶ 5; Answer at 15 ¶ 146.)

17. On July 1, 2019, Kong wrote to Martinez by email and discussed his violation of the Contract. Kong wrote: "you are currently in violation of the Kong Reseller Policy and in breach of your Sell Through Agreement. Piccard Meds 4 Pets current[ly] has Kong listed on Amazon, Amazon CA and Walmart.com. These will need to be [removed] within 24 hours." (Rich Decl. at ¶ 16; Ex. 7, July 1, 2019 email correspondence from KONG to Martinez, at PIC000196- PIC000197; Scheduling Order at 10 ¶ 6; Answer at 15 ¶ 147.)

18. Denied that after July 1, 2019, Martinez continued to violate his Contract by selling Kong products on prohibited third-party marketplace websites including Amazon and Walmart but admitted that Piccard did. Denied that Martinez also began selling Kong products on eBay, another third-party marketplace website that is prohibited by his Contract but admitted that Piccard did. (Rich Decl. at ¶ 17.)

19. Admitted that on October 17, 2019, Kong informed Martinez that he and

Piccard Meds for Pets Corp had been formally terminated as Authorized Sellers of Kong products because of their continued sales of Kong products on third-party marketplace websites. Kong wrote by email that: "After being given several opportunities to comply with Kong's Reseller Policy, and your Sell Through Agreement, Piccardmeds4Pets continues to sell on Third Party Marketplaces such as Amazon and Ebay, and represent the brand as an approved Third Party Marketplace Reseller. Because of these non-compliant actions we have revoked authorized reseller status." (Rich Decl. at ¶ 18; Ex. 8, October 17, 2019 email correspondence from Kong to Martinez, at PIC000195; Scheduling Order at 10 ¶7; Answer at 15 ¶ 148.)

20. Admitted that Kong's October 17, 2019 email also warned Martinez that Kong would pursue him for breach of his Contract unless he permanently removed his listings of Kong products from all third-party marketplace websites "by the end of day October 18, 2019." (Rich Decl. at ¶ 19; Ex. 8 at PIC000195; Scheduling Order at 10 ¶ 7; Answer at 15 ¶ 148.)

21. Denied that after October 18, 2019, Martinez did not permanently remove his listings of Kong products from third-party marketplace websites because he personally did not have any listings. Admitted that Piccard did not remove the listings. Denied that over the following 16 months, Martinez continued to periodically list Kong products for sale through his storefronts on Amazon, Walmart, and eBay but admitted that Piccard did. Denied that although Martinez occasionally removed his listings from Amazon, Walmart, and eBay, any removal was temporary and Martinez always resumed listing Kong products on third-party marketplace websites despite the prohibition in the sell-through agreement, but admitted that Piccard did. (Rich Decl. at ¶ 20; Scheduling Order at 11 ¶¶ 10, 12; Answer at 15-16 ¶¶ 152, 154.)

22. Admitted that on February 8, 2021, Kong sent a cease-and-desist letter to

Martinez and Piccard Meds for Pets Corp. Admitted that the letter explained, among other things, that Martinez continued to be in breach of his sell-through agreement by selling Kong products on third-party marketplace websites, although by way of clarification Martinez doesn't sell products Piccard does. Admitted that the letter stated that "When Kong previously brought these matters to your attention, you signed a settlement agreement with Kong on March 1, 2019. In this contract, you agreed to immediately cease purchasing Kong products and stop selling Kong products on online marketplaces after March 31, 2019. You have continued to sell Kong products on Amazon in violation of this agreement. Since you have breached the agreement, you are responsible for the attorneys' fees incurred by Kong in enforcing its agreement against you." Although by way of clarification, Martinez does not sell products, Piccard does. (Rich Decl. at ¶ 21; Ex. 9, February 8, 2021 cease-and-desist letter, at PIC000081; Scheduling Order at 10-11 ¶ 9; Answer at 15 ¶ 151.)

23. Denied that Martinez continues to sell Kong products on third-party marketplace websites after February 8, 2021 and continuing to the present, even after Kong filed the instant lawsuit but admitted that Piccard does. (Rich Decl. at ¶ 22; Scheduling Order at 11-12 ¶¶ 12-13, 15; Answer at 16 ¶¶ 154-155, 157.)

24. Denied that as of the time of filing, Martinez is actively listing Kong products for sale on his storefronts on Amazon [https://www.amazon.com/sp?seller=AP4I3C6AVO63C)](https://www.amazon.com/sp?seller=AP4I3C6AVO63C) and eBay ([https://www.ebay.com/usr/piccardmeds4pets](https://www.ebay.com/usr/piccardmeds4pets)) but admitted that Piccard does as well as other sellers. (Rich Decl. at ¶ 22.)

25. Denied that Kong has been damaged by Martinez's breaches of his Contract because the Contract was not with Martinez it was with Piccard. Piccard also denies that Kong has been damaged. Further, despite Kong's assertions that when consumers purchase Kong products on third-party marketplace websites that are of poor quality or otherwise unsatisfactory, consumers write negative online reviews of the products that criticize Kong and

cause other consumers to be less likely to purchase Kong products, Piccard has not done this. Admitted that Kong has approved only a small number of Authorized Sellers to sell on third-party marketplace websites, as to the remainder Piccard has insufficient information to either admit or deny whether it is so Kong can carefully monitor those Authorized Sellers and take corrective action if they sell poor quality products or otherwise cause consumers to write negative reviews of Kong products. Denied that Kong cannot carry out this oversight or take any corrective action to protect its brand goodwill when sellers such as Martinez continue to sell on third-party marketplace websites, outside of Kong's quality controls, after expressly agreeing to stop because Martinez does not sell on third party websites. Piccard also denies this statement. (Rich Decl. at ¶ 23.)

26. Defendant cannot admit or deny whether KONG has also incurred substantial costs in monitoring Martinez's continued sales on third-party marketplace websites and urging him to cease his sales, to no avail. (Rich Decl. at ¶ 23.)

### III. STATEMENT OF ADDITIONAL DISPUTED FACTS

1. Martinez is the owner, founder and CEO for Piccard Meds 4 Pets Corp.. At all times in his conversations with Kong, he functioned in his corporate capacity and not individually. See Martinez Affidavit.

2. In 2011, Piccard Meds 4 Pets Corp was incorporated in Florida and had two employees. It has now grown to 14 employees and from 150k sales in its first year to just over 7 million last year. Piccard has acquired 99.5% ratings and over 17k positive reviews on ebay, 4.6 stars on Goggle, and the top ranking on Amazon. See Martinez Affidavit, Para. 2, and Ex. A attached thereto.

3. Piccard began selling Kong Products in their retail location in Jacksonville store and online in 2013. Piccard gradually added more of their products, after meeting Manny

Becerra from the Gralen Co. who introduced Piccard to many new products. See Martinez Affidavit, Para. 3.

4. On around June of 2017, Piccard received a letter from Lyndsey Erb, the Ecommerce Manager for Kong who requested information on Piccard Meds 4 Pets including who they were, where we were selling and where we were buying the Kong product. See Martinez Affidavit, Para. 4, Ex. B attached thereto. Lynsey and Dan Overbeck explained they had been having a series of counterfeit issues with China fakes and they wanted to verify who their sellers were and where the product was coming from. We complied and they agreed that we could sell Kong products. They also wanted to update image changes, correct titles, and update pricing. We complied with their request and they approved the changes. See Martinez Affidavit, Para. 4 and Ex. C attached thereto.

5. Kong's assertion that they only discovered in 2019 that Piccard was selling their products on Amazon is false as Piccard was authorized and selling their product on 3rd party websites since 2013 and as an authorized seller since 2017. See Martinez Affidavit, Para. 5.

6. In April 2018 we contacted Kong once more to make certain we were all good with new enforced MAP pricing or any other issues. At that time, Lyndsey Erb was no longer with the company and Miss Lindsay Rich replied to me that I had a "…fantastic online store…" and that Piccard was "…an authorized reseller of KONG products…". See Martinez Affidavit, Para. 6 and Ex. D attached thereto.

7. In February 2019, Piccard received a Violation for incorrect MAP pricing on Amazon. This was resolved and Piccard kept on selling. See Martinez Affidavit, Para. 7.

8. That same month Piccard was contacted again, and informed that Piccard needed to remove all our listings other than my site which was a total reversal of their policy up to this point. See Martinez Affidavit, Para. 8.

9. Martinez, on behalf of Piccard, agreed with their sell through agreement, but their lack of cause for doing this indicated they were not interested in Piccard selling on third party sites. Martinez on behalf of Piccard pleaded with them and sent them proof on how this would affect Piccard sales, and that Piccard would lose employees. See See Martinez Affidavit, Para. 9 and Ex. F attached thereto. Kong never replied.

10. As Kong continued to enforce the sell through agreement, Piccard had thousands of dollars of Kong inventory they couldn't sell and couldn't get credit for, so Piccard continued to sell by listing periodically on Amazon and other websites to try and move the inventory respecting my original agreement from 2017 with Linsey Erb and Dan Overbeck. See Martinez Affidavit, Para. 10.

11. Piccard have only sold original, new Kong products, have complied with a stringent return policy and offered the same warranty and guarantees as Kong because we were selling original new Kong products. See Martinez Affidavit, Para. 11.

12. Kong continues to allow certain resellers to sell on Amazon and was at the time Martinez signed the Sell Through Agreement on behalf of Piccard. See Martinez Affidavit, Para. 13, Ex. G. Because Martinez was aware that they were allowing some resellers to list on Amazon, he realized Kong never intended to allow Piccard to sell on 3rd party websites. Martinez Affidavit, Para. 13.

## IV. LAW AND ARGUMENT

### A. Standard of Review

Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal- Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If

the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id*. at 671. The court must examine all the instruments in the light most favorable to the party opposing the motion. *Madison v. Deseret Livestock Co*., 574 F.2d 1027, 1036 (10th Cir. 1978).

**B.     Count VIII of the Complaint is Brought Against Marlon Martinez individually who is not the Appropriate Party to Pursue for Breach of the Sell Through Agreeement.**

Colorado law is very clear that a duly formed corporation is treated as a separate legal entity, unique from its officers, directors, and shareholders. *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo.2003). See also *Micciche v. Billings*, 727 P.2d 367, 372 (Colo.1986) (citing Krendl & Krendl, *Piercing the Corporate Veil: Focusing the Inqui*ry, 55 Den. L.J. 1 (1978)). In *Micciche* the Court held that:

> This separate status isolates the actions, profits, and debts of the corporation from the individuals who invest in and run the entity. *Micciche*, 727 P.2d at 369 (citing H. Henn & J. Alexander, *Laws of Corporations* 14446 (3d ed.1983)).

In *Leonard v. McMorris,* 63 P.3d 323 (Colo.2003)., the Court explicitly stated that "Insulation from individual liability is an inherent purpose of incorporation". *Leonard*, at 330. "Thus, the corporate veil protects shareholders from individual liability for the actions of the corporation." *In re Phillips*, 139 P. 3d 639, 644 (Colo. 2006).

In the present case. Piccard is a duly incorporated entity in the State of Florida. Piccard, not Martinez, sold the goods on 3rd party websites, collected funds for the sales and purchased the products which were sold on those websites. The Sell Through Agreement (Plaintiff's Ex. 5) was entered into with Piccard as the entity who is identified in the Information Required section of the Agreement and it is the Piccard websites which were listed with Amazon and Ebay as being the sellers. And, yet, despite that knowledge, Plaintiff has brought this cause of

12

action against Martinez individually without detailing any premise as to why Martinez is individually liable instead of the entity which is doing business.

As stated in *Phillips*, "…the corporate veil protects shareholders from individual liability for the actions of the corporation." Id. The corporate veil of Piccard protects Martinez individually from just such actions as this. The failure of the Plaintiff to address this or explain why Martinez individually is liable rather than the entity that does all the business, collects funds, runs the websites and that the Plaintiff alleges is damaging them means this Motion must fail unless Plaintiff presents some factual evidence as to why the corporate veil of Piccard should be pierced. Because Plaintiff has not, this Motion should be denied.

**C. The Sell Through Agreement Which Forms the Basis of This Claim Is An Illusory Contract Which Is Unenforceable.**

An illusory promise is one that appears to be real, but in reality offers nothing. The Sell Through Agreement (Plaintiff's Ex. 5) is a classic case of an illusory contract. *In re Cox Enterprises*, *Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195 (10th Cir. 2016), the Court held that:

> Whereas a real promise can be consideration for a contract, an illusory promise cannot. If all the consideration given by one party to a contract consists of illusory promises, then the party has provided no consideration and cannot enforce the contract." *In Re Cox*, at 1209.

When a party does not give up anything of value and no rights are created that a party did not already possess, the contracts are wholly illusory. *Bernhardt v. Hemphill*, 878 P. 2d 107, 111 (Colo. App. 1994).

The exchange in the present case reveals why this concept applies. First, Kong explains on 2/25/19 that "Your account remains on hold due to active Amazon listings. As you are aware KONG's policies no longer allow for its product to be listed on Third Party Marketplaces." Plaintiff's Ex. 2, Bates PIC000147. Further, Kong states that "…the existence of multiple KONG sellers on the Amazon Marketplace ….. has led to damage to the KONG

13

brand." Prior to that on the same day at 11:19 a.m., Piccard had stated that "KONG is huge account seller for us, we have quite a bit of inventory in FBA warehouses, can we finish selling these off?" Pl. Ex. 4, PIC000146. Lindsay Rich responded "Of course we will be meeting this request. In these cases, we ask that a 3rd Party Marketplace Sell Through agreement be signed. I have attached this document for your review. Upon receiving the signed copy back Piccardmeds4pets will be in good status with KONG and will be eligible to order again for your own website, if this is needed." Pl. Ex. 4, PIC000145. In other words, Kong said if you sign this agreement, you will be "in good status" to order again for reordering for the Piccard website. Of course, this didn't respond to the request of Piccard to sell their inventory being held in FBA warehouses.[3] The signing of the agreement did absolutely nothing for Piccard regarding the FBA inventory it had. This, of course, was followed by Rich's treatise about Kong having too many sellers on Amazon and in diluting the marketplace.[4]

The Sell Through Agreement is a classic case of not giving up anything of value and because no rights were created that Kong did not already possess, the Agreement was wholly illusory. See *Sentinel Acceptance Corp. v. Colgate*, 162 Colo. 64, 424 P.2d 380, 3872 (1967) (agreement which left sole discretion whether or not to perform to one party was illusory). Piccard had no choice but to continue to sell on Amazon to get rid of their inventory thus violating the Agreement. And Kong indicated that Piccard had to sign the agreement suspending Piccard's right to buy which they never intended to allow Piccard to do in the first place. The Sell Through Agreement was illusory and as stated:

> If all the consideration given by one party to a contract consists of illusory promises, then the party has provided no consideration and cannot enforce the contract." *In re Cox Enterprises*, cited supra.

---

[3] An FBA warehouse stands for "fulfillment by Amazon".

[4] As stated previously in Martinez's affidavit, Ex. G, Kong still allows sellers to sell on Amazon. Just not Piccard.

Under these circumstances, Kong cannot enforce the Sell Through Agreement because it is an illusory contract.

**D. Because the Plaintiff's Damages are Speculative and Unproven for the Alleged Breach of Contract, this Motion Cannot be Granted Until Plaintiffs Prove Up That They Have Actual Damages.**

Plaintiff cites that Colorado law expressly governs the parties' Contract, and because of that the elements of breach of contract are: "(1) the existence of [a] contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *Conagra Trade Grp., Inc. v. Fuel Exploration, LLC*, 636 F. Supp. 2d 1166, 1171 (D. Colo. 2009) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

The issue with their analysis resides in their assertion that Kong has been damaged by Piccard's breaches of the parties' Contract. As stated, Kong prohibits its Authorized Sellers from selling on third-party marketplace websites without its approval and has approved only a small number of Authorized Sellers to sell on third-party marketplace websites so that it can carefully monitor its approved Authorized Sellers and take corrective action if they sell poor quality products or otherwise cause consumers to write negative reviews of Kong products, which harm Kong's brand goodwill. *See* SUMF ¶¶ 2-3, 25. Kong cannot exercise this oversight over Piccard or take any corrective action. And then they imply that Piccard sells poor quality products because they have flouted the parties' Contract and continue to sell products on third-party marketplace websites as an unauthorized seller outside of Kong's quality controls. SUMF ¶ 25. Piccard has emphatically denied that they sell poor quality products or that their warranty or guarantees differ. See Martinez Affidavit, Para. 11. In fact, that is the basis of much of Plaintiff's Complaint regarding Trademark Infringement. And after 77 pages, they pointed out the problem of product quality, but failed to connect that to Piccard. Because of that, as Kong stated in this Motion.

KONG's other claims depend on facts that will be developed in discovery, the facts that establish Martinez's liability for breach of contract are straightforward and undisputed. Motion, p. 11.

The facts related to the claimed damages in Count VIII are identical to the other Counts that Kong has filed and an order granting this Motion may be res judicata as to the other claims of Kong. All the claims of Kong including the ones in this Count should be also developed in discovery because they are the exact same damages as Kong claims in this Motion.

## IV. CONCLUSION

For the reasons stated above, Martinez and Piccard request that this Court deny the Plaintiff's Motion allowing the Parties to do discovery on the issues as stated, and for such other relief as this Court sees fit to grant.

Respectfully submitted this 28th day of December, 2021.

/s/ *Michael J. Davis*
ATTORNEYS FOR DEFENDANTS:
Michael J. Davis #44287
Davis Murray Law LLC
1001 Bannock Street, St. 133
Denver, Co. 80204
720-361-6036
Fax : 720-368-5262

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2021, a true and correct copy of the foregoing document was filed with the Court and will be served by to all parties of interest by the Court filing system.

*/s/ Michael J. Davis*
Michael J. Davis