IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02040-NRN

THE KONG COMPANY, LLC, a Colorado limited liability company,

    Plaintiff,

v.

PICCARD MEDS FOR PETS CORP, a Florida corporation,
MARLON MARTINEZ, a natural person, and
JOHN DOES 1-10, individually or as corporate/business entities,

    Defendants.

---

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(Dkt. #23)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court upon the consent of the parties (Dkt. #14) and pursuant to an Order (Dkt. #15) issued by Chief Judge Philip A. Brimmer referring the case. The matter pending before the Court is Plaintiff The Kong Company, LLC's ("KONG") Motion for Partial Summary Judgment. (Dkt. #23.) Defendant Marlon Martinez ("Mr. Martinez") responded (Dkt. #26), and KONG filed a reply. (Dkt. #27.) On February 2, 2022, the Court heard argument on the subject motion. (*See* Dkt. #48.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** that KONG's Motion for Partial Summary Judgment (Dkt. #23) are **GRANTED** in part and **DENIED** in part.

**UNDISPUTED MATERIAL FACTS**[1]

This lawsuit arises from an ongoing business dispute between KONG and Defendants Piccard Meds for Pets Corporation ("Piccard") and Mr. Martinez (collectively, "Defendants") that began in February 2019. Piccard is a Florida corporation that operates several online storefronts on Amazon, eBay, Walmart, and its own private website. (Dkt. #1 at 2, ¶ 2; Dkt. #13 at 1, ¶ 2.) Mr. Martinez is the CEO of Piccard and operates Piccard's various storefronts. (Dkt. #1 at 3, ¶ 3, Dkt. #13 at 2, ¶ 3.)

A majority of the following undisputed facts are taken from Plaintiff's Partial Motion for Summary Judgment (Dkt. #23) because most of Mr. Martinez's denials of KONG's undisputed facts were unsupported by additional evidence and, therefore, did not create an issue of material fact. *See Otter Prods., LLC v. Triplenet Pricing Inc.*, No. 19-cv-00510-RMR-MEH, 2021 WL 5232639, at *5 n.4 (D. Colo. Nov. 10, 2021) ("[B]ald assertions do not create an issue of material fact . . . . Where a nonmoving party does not offer any evidence, there is not a basis on which a jury could find in its favor.").

KONG manufactures and distributes high-quality pet products. (Dkt. #23 at 3, ¶ 1.) To ensure the quality of its products, KONG only allows its products to be sold in the United States via a network of authorized sellers who agree to abide by KONG's policies. (*Id.*, ¶ 2.) One of those policies restricts authorized sellers from selling KONG products on third-party marketplace websites like Amazon or eBay unless the seller first receives written approval from KONG. (*Id.*, ¶ 3.) Authorized sellers are, however, permitted to sell KONG products on websites they operate themselves or in physical

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

retail stores. (*Id.*) KONG provided Mr. Martinez with the Authorized Reseller Policy on April 17, 2018.[2] (*Id.*, at 4, ¶ 5.)

In February 2019, KONG discovered that Defendants, who were authorized sellers but had not been approved to sell KONG products on third-party marketplace websites, as required by the 2018 Authorized Reseller Policy, were selling KONG products on Amazon.[3] (*Id.*, ¶ 4.)

On February 25, 2019, KONG informed Mr. Martinez that his authorized seller account was on hold due to his active Amazon listings, which violated KONG's 2018 Authorized Reseller Policy. (*Id.*, ¶ 6) KONG explained that the hold on Mr. Martinez's authorized seller account would be lifted "[u]pon removal of KONG products from 3rd Party Marketplaces." (*Id.*) That same day, Mr. Martinez responded to KONG that he

---

[2] Mr. Martinez states that the Authorized Reseller Policy was not provided to him in his *individual capacity* and argues that the policy prohibited "Piccard, not Martinez" from selling KONG products on third-party marketplace websites. (Dkt. #26 at 3, ¶ 5.) However, KONG only alleges that the policy was provided to Mr. Martinez (Dkt. #23 at 3, ¶ 5), which Mr. Martinez does not dispute. (*See* Dkt. #26 at 3.) It is irrelevant whether Mr. Martinez received it in his individual or official capacity. Further, Authorized Reseller Policy does not, in fact, even mention Piccard or Mr. Martinez but rather uses the generic term, "Reseller." (*See* Dkt. #23-2, Authorized Reseller Policy.) Regardless, this fact is immaterial because, as stated above, the Authorized Reseller Policy is not directly at issue for this breach of contract claim.

[3] Mr. Martinez contends that this is a disputed fact because Piccard had been selling KONG products on third-party marketplace websites since 2013 and had been authorized to sell on those websites since 2017. (*See* Dkt. #26 at 3, ¶ 4.) In support of this assertion, Mr. Martinez submits an affidavit signed by him claiming he was "authorized and selling their product on 3rd party websites since 2013 and as an authorized seller since 2017." (Dkt. #26-1.) The issue of when KONG first knew of Mr. Martinez's sale on third-party marketplace websites is immaterial because, as set forth more fully below, the breach of contract claim only challenges Mr. Martinez's sale of KONG products after he executed a sell-through agreement. For that same reason, the issue of whether Mr. Martinez was authorized to sell on those websites in 2017 is also immaterial.

understood the arrangement but asked if he could finish selling off his KONG products for cost purposes. (*Id.* at 4–5, ¶¶ 7–8.) KONG responded to Mr. Martinez, explaining that KONG would be willing to enter a third-party marketplace sell-through agreement, which would allow Mr. Martinez to temporarily sell KONG products on Amazon until an agreed upon sell-through date (the "Sell-Through Agreement"). (*Id.* at 5, ¶ 8.) KONG also explained that, once Mr. Martinez signed the Sell-Through Agreement, he would be permitted again to sell KONG products through Piccard's private website. (*Id.*)

On March 1, 2019, Mr. Martinez signed the Sell-Through Agreement and KONG countersigned on March 4, 2019. (*Id.*, ¶ 9; *see also* Dkt. #23-6.) The signed agreement stated that "[a]fter March 31, 2019 (the 'Sell-Through Date'), neither I nor any employee, agent, or anyone else acting at my direction or on my behalf, will advertise or sell any products bearing any KONG trademarks ('KONG products') on any Third Party online marketplace . . . ." (Dkt. #23 at 5, ¶ 10; Dkt. #23-6.) The Sell-Through Agreement also states that "[a]fter the Sell-Through Date, I will only advertise or sell KONG Products in compliance with KONG's Authorized Reseller Policy (the 'Policy'), as it may be amended from time to time." (Dkt. #23 at 5, ¶ 12; Dkt. #23-6.)

On March 5, 2019, KONG sent an email to Mr. Martinez stating that he had again been approved to sell KONG products on the Piccard private website. (Dkt. #23 at 6, ¶ 15.) Thus, KONG argues, KONG complied with its obligations under the Sell-Through Agreement. (*Id.*) Mr. Martinez, however, did not comply with his obligations under the Sell-Through Agreement. He continued to sell KONG products on Amazon after March 31, 2019. (*Id.*, ¶ 16) Mr. Martinez also began listing KONG products on Walmart's website, another third-party marketplace, after March 31, 2019. (*Id.*)

4

On July 1, 2019, KONG notified Mr. Martinez of his violation of the Sell-Through Agreement and requested that the products be removed from Amazon and Walmart within twenty-four hours. (*Id.* at 7, ¶ 17.) Mr. Martinez did not comply with KONG's request and continued selling KONG products on third-party marketplace websites. (*Id.*, ¶ 18.)

On October 17, 2019, KONG informed Mr. Martinez that he and Piccard had been formally terminated as authorized sellers of KONG products because of their continued sale of KONG products on third-party marketplace websites. (*Id.*, ¶ 19.) KONG also warned Martinez that it would pursue a breach of contract claim against him unless he permanently removed all of his listings of KONG products from third-party marketplace websites by the end of the day. (*Id.*, ¶ 20.)

Mr. Martinez did not remove his listings and instead continued to periodically sell KONG products on third-party marketplace websites, even after KONG sent a cease-and-desist letter to Mr. Martinez and Piccard on February 8, 2021. (*Id.* at 8, ¶ 22.) Mr. Martinez continued to sell KONG products on third-party marketplace websites up until KONG filed this suit. (*Id.*)

KONG claims that, as a result of Mr. Martinez's breach of the Sell-Through Agreement, KONG has been damaged. (*Id.* at 9, ¶ 25.) KONG explains that has incurred substantial costs in monitoring Mr. Martinez's continued sales on third-party marketplace websites and in enforcing the Sell-Through Agreement. (*Id.*, ¶ 26.) KONG does not provide information about actual damages suffered.

Additionally, KONG states that it has been unable to protect its brand goodwill due to Mr. Martinez's continued sales outside of KONG's quality controls. (*Id.*) KONG

5

explains that it "cannot carry out this oversight [of products sold on third-party marketplace websites] or take any corrective action to protect its brand goodwill when sellers such as Martinez continue to sell on third-party marketplace websites, outside of KONG's quality controls, after expressly agreeing to stop." (*Id.*, ¶ 25.)

## **LEGAL STANDARDS**

I.  **Motion for Summary Judgment under Rule 56**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary

6

judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

I.  **Plaintiff is entitled to summary judgment on its breach of contract claim.**

KONG argues it is entitled to summary judgment on its breach of contract claim because it has satisfied the four elements required under Colorado law. Mr. Martinez, for his part, argues KONG's motion should be denied because he is not the proper defendant, the contract lacks consideration, and KONG's damages are too speculative. (*See* generally Dkt. #26.) The Court examines whether KONG has established its breach of contract claim, and, in doing so, will address Mr. Martinez's arguments.

"Under Colorado law, a breach of contract claim has four elements: '(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.'" *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., LLC*, 887 F.3d 1003, 1017–18 (10th Cir. 2018) (quoting *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

As to the first element—whether a contract exists—Mr. Martinez argues there is no enforceable contract because it is an "illusory contract" and "no rights were created that [KONG] did not already possess." Mr. Martinez argues that "[t]he signing of the agreement did absolutely nothing for Piccard regarding the FBA[4] inventory it had." Put another way, Mr. Martinez argues that the Sell-Through Agreement is unsupported by consideration. The Court disagrees.

---

[4] FBA means "fulfillment by Amazon." (Dkt. #26 at 14 n.3.)

8

"An enforceable contract must be supported by consideration." *Butera v. Crane*, No. 13-cv-03327-RBJ, 2015 WL 5562175, at *2 (D. Colo. Sept. 22, 2015). "In the context of most written contracts, there is a presumption that the contract is supported by consideration." *Id.* "[A] promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render the contract enforceable." *Vernon v. Qwest Commc'ns. Intern., Inc.*, 857 F.Supp.2d 1135, 1154 (D. Colo. 2012) (quoting *DeFeyter v. Riley,* 43 Colo. App. 299, 606 P.2d 453, 454 (1979)).

Here, there was consideration in the Sell-Through Agreement because, in exchange for Mr. Martinez's promise to not sell KONG products on third-party marketplace websites after March 31, 2019, KONG promised to suspend its enforcement process against Mr. Martinez and to not file a lawsuit for trademark infringement related to the unauthorized sale of KONG products. Mr. Martinez's claim that the agreement "did absolutely nothing for Piccard regarding the FBA inventory it had" (Dkt. #26 at 14) does not negate the fact that the agreement imposed mutual obligations on the parties. Mr. Martinez could have negotiated for a later sell-through date or included a provision regarding his FBA inventory—his failure to do so does not rebut the existence of consideration in the contract. *See id.* at 1154 ("In Colorado 'every contractual obligation need not be mutual as long as each party has provided some consideration to the contract.'" (quoting *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001))).

Mr. Martinez also argues that, if there is an enforceable contract, he is not the proper defendant because he did not enter the contract in his personal capacity. Specifically, Mr. Martinez argues that "[t]he Sell Through Agreement . . . was entered

9

into with Piccard as the entity who is identified in the Information Required section of the Agreement and it is the Piccard websites which were listed with Amazon and Ebay as being the sellers." But Mr. Martinez already admitted to being the party that entered into the Sell-Through Agreement in his Answer and in the undisputed facts section of the proposed scheduling order submitted by the parties. Specifically, Mr. Martinez admitted in his Answer: (1) "KONG and Martinez entered into a sell-through agreement"; (2) "In the agreement, Mr. Martinez promised that, after March 31, 2019, neither he nor anyone else acting at his direction or his behalf would sell KONG products through any online marketplace"; and (3) "Martinez entered the sell-through agreement with KONG." (*See* Dkt. #1 at 40, ¶ 145, and 54, ¶ 207; Dkt. #13 at 15, ¶ 145, and 23, ¶ 207.) Mr. Martinez also attested to these same facts in the proposed scheduling order, jointly prepared by the parties, which were adopted as undisputed facts by the Court in its Scheduling Order. (*See* Dkt. #17 at 9, ¶ 4, and 13, ¶ 23; Dkt. #19 at 9, ¶ 4, and 13, ¶ 23.)

It is well within the discretion of the Court to hold Mr. Martinez to every fact attested to by counsel's signature. *See Phillips v. Pepsi Bottling Group*, No. 05–cv–01322–EWN–PAC, 2007 WL 4250016, at *3 (D. Colo. Nov. 30, 2007) ("[I]t is well within my discretion to hold Plaintiff to each and every initial factual response unaffected by the additional discovery and attested to by counsel's signature on Plaintiff's first response brief . . . ."). The Court finds that Mr. Martinez is the proper defendant for this breach of contract claim due to his prior admissions, which are attested to by his counsel's signature. Therefore, the Court finds that KONG has successfully proven the first element of its breach of contract claim against Mr. Martinez.

With respect to the second element of a breach of contract claim—whether the plaintiff has performed—KONG demonstrated that it performed under the Sell-Through Agreement. On March 5, 2019, one day after the parties executed the Sell-Through Agreement, KONG sent an email to Mr. Martinez stating that he had again been approved to sell KONG products on the Piccard private website. (Dkt. #23 at 6, ¶ 15.) Mr. Martinez does not dispute that KONG performed its obligations with any admissible evidence. Though Mr. Martinez denies that KONG complied with its obligations, he presents no evidence in support of his denial. (Dkt. # 26 at 6, ¶ 15.) Thus, there is no issue of material fact. *See Otter Prods., LLC*, 2021 WL 5232639, at *5 n.4. The Court finds that KONG has successfully proven element two of its breach of contract claim.

As to third element—whether the defendant breached—it is undisputed that Mr. Martinez did not comply with his obligations under the Sell-Through Agreement. (*Id.*, ¶ 16.) Mr. Martinez, however, argues that "Piccard, not Martinez, sold the goods on 3rd party websites" and, therefore, he is not the one who failed to perform the Sell-Through Agreement. Similar to the Court's analysis of whether Mr. Martinez is the proper defendant for this breach of contract claim, Mr. Martinez already admitted that "Martinez did not comply with the sell-through agreement" in his Answer, in the undisputed facts listed in the proposed scheduling order, and in response to the motion for summary judgment. (*Id.*; Dkt. #1 at 41, ¶ 146; Dkt. #13 at 15, ¶ 146; Dkt. #17 at 9, ¶ 5.) Therefore, the Court finds that Mr. Martinez has already admitted a failure to perform under the contract and KONG has successfully proven element three.

Finally, as to the fourth element of the breach of contract claim—damages—KONG has demonstrated that it has suffered various expenses and reputational harm

as a result of Mr. Martinez's breach. (Dkt. #23 at 9, ¶¶ 24–25.) Mr. Martinez argues that KONG's damages are speculative and unproven. Specifically, Mr. Martinez argues that, because the facts related to KONG's claimed damages for its breach of contract claim are identical to the damages for its other claims, KONG can only show damages from the breach of contract if it shows that Mr. Martinez has sold KONG products that lack the KONG satisfaction guarantee or are of poor quality, which he has emphatically denied. (Dkt. #26 at 15–16.) However, KONG's claimed damages for its breach of contract claim center around the costs incurred in monitoring Mr. Martinez's continued sales on third-party marketplace websites and its inability to exercise oversight because of Mr. Martinez's continued sales on third-party websites. Though Mr. Martinez denies KONG's assertion that it is unable to carry out its oversight when sellers such as Mr. Martinez continue to sell on third-party marketplace websites, he "cannot admit or deny whether KONG has also incurred substantial costs in monitoring Martinez's continued sales on third-party marketplace websites" and does not present any evidence countering the fact that KONG suffered damages. (*See id.* at 9, ¶ 26.)

Under Colorado law, "in an express contract action, the plaintiff is entitled to recover at least nominal damages if the plaintiff proves the existence of a contract and its breach (and there is no defense) . . . ." *Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1223 (D. Colo. 2005) (citing *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003)). Therefore, the Court finds that, in the absence of evidence presented by Mr. Martinez that rebuts KONG's claim that it has incurred damages, KONG has shown that it has suffered at least *some* damage, even if nominal, as a result of Mr. Martinez's breach of contract. The *amount* of damages

remains to be proven as there is no evidence before the Court concerning the amount of damages related to this claim. Indeed, as set forth below, KONG has stated that it does not seek actual damages and indicated that an award of nominal damages might be appropriate.[5] (Dkt. #27 at 11.) Regardless of the amount of damages, KONG's entitlement to damages on this claim is clear. The Court finds that KONG has successfully proven that Mr. Martinez is liable for breach of the Sell-Through Agreement.

## II. The Court declines to enter an injunction requiring Mr. Martinez's to specifically perform under the Sell-Through Agreement.

Rather than demonstrate the amount of actual damages it has suffered, KONG asks that Court order Mr. Martinez to perform his obligations under the Sell-Through Agreement—i.e., that he permanently stop selling KONG products on third-party marketplace websites.[6] Essentially, KONG argues that because Mr. Martinez continued to sell KONG products through third-party websites in violation of the Sell-Through Agreement, KONG can now pursue its enforcement process against Defendants by refusing to recognize Mr. Martinez as an authorized seller *and* barring him from selling on any third-party websites. By KONG's reasoning, the Court can impose the obligation for Mr. Martinez to cease selling on KONG products third-party sites, without imposing on KONG the reciprocal obligation to reinstate Mr. Martinez as an authorized seller or

---

[5] The Court notes that this runs counter to KONG's claims of "substantial" costs.

[6] In fact, KONG Argues that it "does not seek to recover its actual damages" and instead seeks to require Mr. Martinez to perform his obligations under the Sell-Through Agreement. (Dkt. #27 at 11.)

forgo its enforcement process. In the Court's view, this is not an appropriate use of the Court's equitable power.[7]

A suit for specific performance is an equitable action. *Setchell v. Dellacroce*, 169 Colo. 212, 454 P.2d 804 (1969). The right to specific performance is not absolute; whether the remedy should be granted depends upon the equities of the case, *Ide v. Joe Miller & Co.*, 703 P.2d 590 (Colo.App.1984), and rests within the sound discretion of the trial court. *Hill v. Chambers*, 136 Colo. 129, 314 P.2d 707 (1957). *See also Emery v. Medal Bldg. Corp.,* 436 P.2d 661, 668 (1968) ("[S]pecific performance is never a matter of right and whether in a given case specific performance should be afforded depends upon the circumstances of the particular case, under well-recognized rules of equity jurisprudence." (internal citation and quotations omitted)).

Granting KONG's requested injunction would prohibit Mr. Martinez from selling on any third-party websites and, presumably require him to make sales pursuant to the Authorized Seller Policy (*see* Dkt. #23-6 at 3, subsection (3)), without conferring upon him the reciprocal benefit of being an authorized seller so that he can sell on his own site, and third-party sites in the future, with KONG's permission. The Court finds that equity does not compel the grant of specific performance in such circumstances.

> At least in the enforcement of affirmative promises, a court of equity usually deems it neither wise nor just as a general matter to enforce one or more of such promises in a contract unless it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant.

---

[7] The Court considers the propriety of injunctive relief only with respect to KONG's breach of contract claim. It makes no ruling whether an injunction is an appropriate remedy for KONG's other claims, such as those brought pursuant to the Lanham Act. *See* 15 U.S.C. § 1116(a) (conferring on courts the power to grant injunctions to prevent certain Lanham Act violations).

25 Williston on Contracts § 67:29 (4th ed.) "If the whole outstanding portion of a contract is of such a nature that equity has the power to enforce it, and a part of it is of such a nature that equity ought to enforce it, then equity will enforce the whole. . . ." *Id.* "The function of the court is to do complete justice; and it has power to mold its decree to that end." Restatement (First) of Contracts § 359. "The mandatory order may be directed against the plaintiff . . . as well as against the defendant . . . ." *Id.*

To grant specific performance in favor of KONG would require a reciprocal order that KONG confer on Mr. Martinez the same benefit it previously promised under the Sell-Through Agreement, including foregoing its trademark claims and removing the hold on Mr. Martinez's authorized seller account. At oral argument, KONG expressly stated that it does not seek this mutual relief. The Court believes the unilateral enforcement of the agreement would be unfair—more in the nature of a punishment of Defendants than enforcement of a contract. The remedy should be mutual. *See* Williston, *supra*, §§ 67:29, 67:40; *see also Weeks v. Pratt*, 43 F.2d 53, 57 (5th Cir. 1930) ("Equity will not enforce part of a contract unless it can be separated from the rest without changing the contract in any essential particular."); *Roller v. Weigle,* 261 F. 250, 252 (D.C. Cir. 1919) (explaining that it is a "fundamental principle of specific performance" that "the remedy must be mutual."). Because KONG does not wish the Court to grant a remedy that would secure for Mr. Martinez the benefit of performing under the Sell-Through Agreement, the Court, in its discretion, declines to order Mr. Martinez's specific performance of the contract as a remedy for Mr. Martinez's breach. Instead, this case will proceed, and KONG can demonstrate its damages, if any, at the appropriate time.

### III.     KONG's request for attorneys' fees is premature.

Finally, KONG argues that the Court should award the attorneys' fees it has incurred in enforcing the contract. Specifically, KONG points to the language of the Sell-Through Agreement that states: "Should I breach this agreement, I will be responsible for payment of the attorney's fees incurred by KONG relating to its enforcement of this agreement[.]" (Dkt. #23-5 at 3, subsection (5).)

"A district court has 'wide latitude' in determining the appropriateness and reasonableness of awards of attorney fees." *Student Marketing Group, Inc. v. College Partnership, Inc.*, No. 04-cv-01258-LTB-BNB, No. 04-cv-01258-LTB-BNB, at *1 (D. Colo. Apr. 3, 2006) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986)). At the same time, the Court recognizes that "[w]here attorney fees are provided for in a contract, a district court has 'far less equitable discretion' than in cases where attorney fees are awarded under a fee-shifting statute." *Id.* (quoting *U.S. for the Use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1549 (10th Cir. 1987)).

The Court acknowledges that KONG is entitled to its attorneys' fees under the terms of the Sell-Through Agreement, but finds that granting attorneys' fees at this stage is premature. As previously discussed, it is the Court's finds that summary judgment be granted as to liability on the breach of contract claim, but an order of specific performance is inappropriate, and there is still an issue of the damages owed to KONG as a result of the breach of contract. Therefore, KONG has not incurred all the attorneys' fees required to enforce the contract and it would be premature for the Court to award attorneys' fees at this time.

**ORDER**

In light of the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. #23) is **GRANTED** in part and **DENIED** in part. Specifically, the Court **GRANTS** KONG's request to enter summary judgment in KONG's favor as to Mr. Martinez's liability on the breach of contract claim, but **DENIES** KONG's requests to require Mr. Martinez to perform under the contract and award attorneys' fees. KONG's damages for the breach of contract claim and the award of attorneys' fees for the breach of contract claim shall be determined at a later date.

Dated:   April 29, 2022
         Denver, Colorado

_____
N. Reid. Neureiter
United States Magistrate Judge